UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SIMON SANCHEZ,<br><br>　　　*Plaintiff*,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br>through PATRICK R. DONAHOE,<br>　　Postmaster General,<br><br>　　　*Defendant*. | Civil Action 4:12-CV-01328 |

## Opinion on Summary Judgment

This employment discrimination and breach of contract dispute is before the court on defendant United States Postal Service's motion for summary judgment.  (Dkt. 32). Based on the parties' briefs[1] and a hearing held on January 13, 2014, defendant's motion is granted.

### I.    *Facts of the Case*

For more than 20 years Plaintiff Simon Sanchez has worked as a mail carrier at the Pasadena, Texas post office.  In 2009 Sanchez filed a Title VII retaliation and hostile work environment lawsuit in this court against USPS, challenging discipline he was given for excessive absenteeism.  This court granted summary judgment to USPS on those claims, and the Fifth Circuit affirmed in June 2011.  *Sanchez v. U.S. Postal Serv. ex rel. Donahoe*, 430 F. App'x 368, 369 (5th Cir. 2011).  The following year, Sanchez brought this second suit

---

[1] The court granted plaintiff's motion to extend the time to reply to defendant's motion for summary judgment to December 13, 2013.  (Dkt. 36).  However, plaintiff filed his response nearly three weeks late, on December 30, 2013.  (Dkt. 39).  The court disproves of plaintiff's dilatory filing, but nonetheless will consider his arguments in this decision.

against USPS, again alleging Title VII hostile work environment and retaliation claims, as well as breach of a union-negotiated settlement agreement resolving Sanchez's grievances against USPS.[2]  (Dkt. 21).

The events which undergird Sanchez's claims took place mainly in 2010: (1) in May, Sanchez's supervisor, Mary Melchor, took photographs of Sanchez sorting mail, which Sanchez considered to be sexually harassing; (2) he was repeatedly disciplined for unscheduled absences, which he claims were improperly denied under FMLA;[3] (3) on September 13, Sanchez was accused of intentionally hitting Melchor in the stomach with a mail hamper , for which he was immediately suspended (Dkts. 21, 32); (4) on October 22, Sanchez was issued a notice of removal (termination) from his job, based on the hamper incident as well as failure to follow instructions for proper mail handling procedures. (Dkt. 37-2 at 12); (5) finally, Sanchez claims USPS breached the January 21,2011 settlement agreement which rescinded his notice of removal by not issuing him back pay.  (Dkts. 21, 32).  USPS now seeks summary judgment on all claims.

## II.  *Standard of Review*

Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).  Dispute

---

[2] In January 2013, Sanchez amended his complaint to include the National Association of Letter Carriers as a defendant in a Section 301 hybrid claim against his union and employer. (Dkt. 21). However, Sanchez never served NALC. After nearly ten months of delay, the court prohibited Sanchez from pursuing a claim against NALC in this case.  (Dkt. 31).

[3] Two of these disciplinary suspensions were later reduced as part of grievance settlements.  (Dkt.37-2 at 5-6).

about a material fact is "genuine" if the submitted evidence could lead a reasonable jury to find for the nonmoving party. *In re Seggestrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). In analyzing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### *A. Race, Sex, and Age-based Harassment Claims*

Upon careful review of the summary judgment record, the court finds no basis upon which a reasonable juror could conclude that any of the actions complained of were motivated by Sanchez's race, sex, or age. Sanchez's basis for asserting his claim appears to lie in his following statement: "I don't know . . . any other [above] 40-year old male, Hispanic man that . . . was harassed the way that I was." (Dkt. 32-2 at 47). While Sanchez submits affidavits from coworkers who state that Melchor appeared to single out Sanchez for job criticism, (Dkt. 37-3), none of the affidavits successfully make the case that Sanchez was singled out *because of* his protected status. Some statements allege favorable treatment to Hispanic females over Sanchez; others allege favorable treatment to Caucasian males over Sanchez.[4] (Dkt. 37-3). Most simply note that Sanchez was criticized for certain, isolated actions he took on the job for which the affiants were not criticized. *Hockman v. Westward Comm'cns., LLC*, 407 F.3d 317, 328 (5th Cir.2004) ("[I]solated incidents, (unless extremely serious) will not amount to discriminatory charges" that overcome summary

---

[4] At the January 13th hearing, Sanchez's counsel confirmed the ethnicities of some of authors who wrote affidavits supporting Sanchez's claim that he suffered from discrimination.

judgment.); *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

Even if the actions complained of were severe or pervasive enough to constitute a hostile work environment, the record evidence fails to establish that those actions were based on Sanchez's race, sex, or age. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of'" a plaintiff's protected status. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasis removed) (quoting 42 U.S.C. § 2000e-2(a)(1)); *see also Beaumont v. Texas Dep't of Crim. Justice*, 468 F. Supp. 2d 907, 919 (E.D. Tex. 2006).

### *B. Disability / Rehabilitation Act Claims*

In the disability count of his First Amended Complaint, Sanchez asserted that he had an (unspecified) impairment that substantially limited his major life activities of "breathing and working." (Dkt. 21, ¶ 3). In his summary judgment response, Sanchez claimed that he "was considered to be a disabled person (ankle, knees and stress and anxiety) by his physician's statements in his FMLA paperwork." (Dkt. 37 at 10). Even assuming for purposes of argument that Sanchez could establish that he was a disabled person within the meaning of the Rehabilitation Act or the Americans with Disabilities Act, there is literally no evidence that his disability, either singularly or in combination with other factors, motivated any of USPS's complained-of actions.[5] (Dkts. 21, 32). The repeated denials of

---

[5] In fact, when Sanchez was asked in a deposition whether his disability motivated any of the USPS actions at issue, he did not reply in the affirmative. (Dkt. 32-2 at 47-48) ("Q: 'Did any harassment relate to your disability or your age or your sex?' A: 'I would say my age' . . . .Q: 'Did anyone . . . at the Postal Service make any overt statements to you about your race, your color, your disability, your age or your gender?' A: 'I'm going to say . . . my sex with Mary Melchor . . . .'").

requested FMLA leave, standing alone, prove nothing about motivation. The stated reason for denying these requests was inadequate documentation. Even if Sanchez could undermine this stated justification (which has not been shown on this record), there is simply no basis to infer that the USPS's actions were the result of intent to discriminate based on Sanchez's disability, whether real or perceived.[6]

### *C. Retaliation Claim*

Sanchez claims USPS engaged in retaliation based on his prior EEO complaints. In particular, he asserts that after he initiated a management investigation on May 20, 2010 and filed a formal EEOC complaint on September 17, 2010,[7] he was placed on emergency suspension on September 13, 2010 and given a notice of removal on October 22, 2010. (Dkt. 32-5, at 4). In order to prevail on a claim of retaliation under Title VII, the plaintiff must establish that a retaliatory motive was the "but-for" cause of the adverse action at issue. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

It is true that the protected actions and the adverse employment actions occurred within months of each other. However, the mere fact that some adverse action is taken after an employee engages in some protected activity is not automatically enough to avoid summary judgment. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004); *see*

---

[6] Though there is some discussion in the briefs regarding a claim of failure to accommodate his disability, Sanchez pled no such claim in his First Amended Complaint. Even if he had, there is no evidence in this record that Sanchez ever made, or that USPS ever denied, such a *disability* accommodation request.

[7] USPS terminated the management investigation on May 26, 2010, finding that it "was inconclusive and did not uncover any inappropriate conduct." (Dkt. 32-5, at 11). The EEOC complaint eventually folded in Sanchez's additional allegations of a hostile work environment, retaliation, and unfairly receiving a notice of removal. (Dkt. 32-5, at 10-18). The complaint was terminated upon Sanchez electing to pursue his claims through a lawsuit. (Dkt. 32).

*also Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997). Sanchez offers no evidence that these actions were singularly motivated by a retaliatory intent, only his subjective belief that it was so.[8] This is insufficient to warrant a jury trial.

### D. Breach of Pre-Arbitration Agreement

Sanchez filed a grievance through his union challenging his notice of removal. In January 2011, this grievance was settled by the union and USPS. Under the settlement agreement (the "Pre-Arbitration Agreement"), USPS agreed to reduce the discipline imposed to a time-served seven-day suspension, return Sanchez to work, and make him whole for lost time and benefits (other than those lost for the seven-day suspension). (Dkt. 37-3 at 4). A dispute later arose over whether the "make whole" language required that Sanchez receive backpay for the period of time for which he had been removed (from September 13, 2010 to January 26, 2011). USPS contended that no backpay was owed because Sanchez's own doctor said that he was "totally disabled" from working during that time, citing USPS policy that "[n]o backpay is allowed for any period during which the person was not ready, willing, and able to perform" the job. (Dkt. 32-7 at 19). The union and USPS ultimately resolved this dispute in July 2011, in essence agreeing that Sanchez could use accumulated sick leave and/or annual leave to cover the period of time in question. (Dkt. 32-7 at 13, 21). Sanchez rejects this resolution, and argues that USPS is in breach of the settlement agreement by failing to restore his four months' backpay.

Sanchez's claim is governed by 39 U.S.C. § 1208(b), which is analogous to Section

---

[8] Sanchez claims in his deposition, "[USPS] used a form of emergency suspension, which I can't prove yet, but I think that's a form of retaliation there. That's the only way they could get me off the clock was through an emergency suspension." (Dkt. 32-2).

6

301(a) of the National Labor Relations Act. *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 888 (5th Cir. 2004). A condition precedent for such a section 301 action against an employer is a claim that the union breached its duty of fair representation to the employee. *DelCostello v. Teamsters,* 462 U.S. 151, 165 (1983); *see also Daigle v. Gulf State Utilities Co., Local Union No. 2286*, 794 F.2d 974, 978 (5th Cir. 1986) ("The indispensable predicate for a § 301 action [against an employer] is a fair representation claim against the union."). Because Sanchez does not couple his breach of contract claim against USPS with allegations that NALC breached its duty of fair representation,[9] Sanchez's claim may not proceed.

Even if Sanchez had alleged a breach of the duty of fair representation in his original complaint and properly served it upon the union, his claim would have been time-barred. A six month limitations period applies to such hybrid claims. *DelCostello*, 462 U.S. at 155 (applying the limitations period of the National Labor Relations Act, 29 U.S.C. 160(b)); *see also Daigle*, 794 F.2d at 978. Plaintiff's complaint was filed on April 27, 2012, more than eight months after the union and USPS agreed to resolve the "make whole" dispute.[10] Therefore, this cause of action is time-barred.

### III.  Conclusion

For these reasons, USPS's motion for summary judgment is GRANTED. Sanchez's Title VII, ADA, ADEA, Rehabilitation Act, retaliation, and breach of contract

---

[9] As noted earlier in this opinion, Sanchez had sought to include the NALC as a defendant in a "hybrid" claim, but failed to serve NALC in timely fashion. Thus, the court barred Sanchez from proceeding with his claim against the union. *See supra* note 2.

[10] Even had the complaint been timely filed and served upon the union, the court does not see any evidence of breach of the union's duty of fair representation. The dispute over "make whole" term in the Pre-Arbitration Agreement was genuine and bona fide, and the compromise ultimately agreed to by the union in July 2011 appears both reasonable and in good faith.

claims are denied. A separate final judgment will follow.

Signed at Houston, Texas on January 30, 2014.

_____
Stephen Wm Smith
United States Magistrate Judge